## AGREEMENT AND RELEASE

This Agreement and Release ("Agreement") sets forth the mutual understanding between **OSCAR MIGUEL BAIRES** and **FRANCISCO CLAVEL-MENESES** (collectively "plaintiffs") and **THE NEW GREAT NECK CAR WASH, INC.** and **MATTHEW SILVERMAN** (collectively "defendants") and defendants' parents, subsidiaries, affiliates, successors and assigns, divisions, their respective past and present officers, owners, shareholders, directors, principals, employees, former employees, representatives, service providers, counsel and/or agents whether in their official or personal capacity, and each of their respective successors and assigns regarding plaintiffs' employment and the settlement of any and all claims plaintiffs have or may have against defendants.

**WHEREAS**, plaintiffs commenced an action against defendants in the United States District Court, Eastern District of New York styled <u>Oscar Miguel Baires and Francisco Clavel-Meneses, Individually, On Behalf of All Others Similarly Situated and As Class Representatives v. The New Great Neck Car Wash, Inc. And Matthew Silverman</u> (Case No.: 14-cv-4953) alleging wage and hour violations and retaliation under the Fair Labor Standards Act and the New York Labor Law and employment discrimination;

**WHEREAS**, defendants deny that they failed to pay plaintiffs all wages owed to them or discriminated or retaliated against plaintiffs;

**WHEREAS**, plaintiffs and defendants mutually desire to settle and resolve all disputes and differences between them, on the terms and conditions hereinafter set forth;

**NOW, THEREFORE**, in consideration of the mutual promises contained in this Agreement, defendants and plaintiffs, having been represented by counsel, have independently concluded that it is in their respective best interests to do so, agree as follows:

1. **Payment**

   In lieu of incurring further litigation costs associated with defending the action commenced against them by plaintiffs and in consideration for plaintiffs' execution of this Agreement, which includes a general release, defendants agree to pay Plaintiffs THIRTY SIX THOUSAND DOLLARS ($36,000) inclusive of costs and attorneys' fees on the following schedule:

   (a)  Within ten (10) days after the Court's approval of this settlement agreement:

   (1) One (1) check in the amount of $2,765.35 as wages less applicable withholdings payable to Oscar Miguel Baires;
   (2) One (1) check in the amount of $2,765.35 for liquidated damages and pain and suffering and physical manifestations caused by emotional distress to Oscar Miguel Baires;
   (3) One (1) check in the amount of $4,191.80 as wages less applicable withholdings payable to Francisco Clavel-Meneses;

1

    (4) One (1) check in the amount of $4,191.80 for liquidated damages and pain and suffering and physical manifestations caused by emotional distress payable to Francisco Clavel-Meneses; and

    (5) One (1) check in the amount of $7,340.19 payable to Lipman & Plesur LLP for reasonable attorneys' fees and costs.

(b)  Within sixty (60) days after the Court's approval of this settlement agreement:

    (1) One (1) check in the amount of $1,891.87 as wages less applicable withholdings payable to Oscar Miguel Baires;

    (2) One (1) check in the amount of $1,891.87 for liquidated damages and pain and suffering and physical manifestations caused by emotional distress payable to Oscar Miguel Baires

    (3) One (1) check in the amount of $2,930.34 as wages less applicable withholdings payable to Francisco Clavel-Meneses;

    (4) One (1) check in the amount of $2,930.34 for liquidated damages and pain and suffering and physical manifestations caused by emotional distress payable to Francisco Clavel-Meneses;

    (5) One (1) check in the amount of $5,101.08 payable to Lipman & Plesur LLP for reasonable attorneys' fees and costs.

(c)  Defendants shall issue a Form 1099 to Lipman & Plesur, LLP. Lipman & Plesur, LLP shall be solely responsible for any taxes owed on the sum it receives under this Agreement.

(d)  With respect to the wage portion of the settlement proceeds, Defendants shall issue a form W-2 to each plaintiff that provides a social security or tax ID number and W-4/W-9 forms for the applicable sums they receive under this Agreement. Defendants shall make statutory backup withholdings of 28% in connection with payments made to either plaintiff that does not provide a social security or tax ID number and other requisite documents. With respect to the non-wage portion of the settlement proceeds, Defendants shall issue a form 1099 to each plaintiff. Plaintiffs shall be solely responsible for the payment of any taxes owed on the payments for which taxes are not being withheld by Defendants. Plaintiffs represent that no tax advice has been given to Plaintiffs by Defendants or Defendants' representatives and Plaintiffs understand that Defendants make no representation or guarantee as to the tax consequences of these payments. Plaintiffs hereby agree to indemnify and hold harmless Defendants in connection with any tax liabilities and/or interest, penalties, or costs that may be incurred by Plaintiffs for any failure by them to properly report the payment.

(e)  In the event that defendants fail to make a timely payment of any installment as set forth in paragraph 1, defendants will be in default. Plaintiffs shall provide notice of the default by email to jamiefelsen@mllaborlaw.com. Defendants will then have five (5) business days from the date of receipt of such default notice within which to cure the default. If the default is not cured within such time, the entire amount remaining to be paid shall become due and owing as of the sixth

day following the receipt of said notice, with annual interest to commence as of that date at a rate of nine percent (9%), compounded monthly, on the amount remaining to be paid. Plaintiffs shall have the right to recover attorneys' fees, costs and disbursements incurred in enforcing the payment obligations under this Agreement.

2.  **Settlement of All Claims**

Upon execution of this Agreement, all claims and/or potential claims by plaintiffs against defendants, including but not limited to, claims for wages, liquidated damages and attorneys' fees, and without admission that plaintiffs have established that any such claims have any merit or that plaintiffs have incurred any damages, shall be deemed settled, satisfied and resolved.

3.  **Covenant Not to Sue**

Plaintiffs shall not hereafter directly or indirectly commence, continue, assist or participate in any lawsuit, charge, claim or proceeding, in any forum (including but not limited to any court or agency, with the exceptions discussed in paragraph 8 below), against defendants arising out of or relating to any allegation or claim (whether plaintiffs' or any other person's) concerning plaintiffs' employment with defendants, or all claims referred to or identified in the various correspondence, pleadings, etc. to and between the parties' respective law firms, unless directed by court order or subpoena. Should plaintiffs receive a subpoena demanding that he provide any testimony or information regarding any issue covered within this Agreement, plaintiffs and/or her counsel shall immediately notify defendants c/o Jamie S. Felsen, Esq., Milman Labuda Law Group PLLC, 3000 Marcus Avenue, Suite 3W8, Lake Success, New York 11042, in writing of any such required disclosure not less than ten (10) days prior to the time set for disclosure to allow defendants sufficient time to address and move to quash said subpoena. If this paragraph is breached by either plaintiff, the breaching plaintiff shall pay, in addition to damages, all attorneys' fees incurred by defendants in defending any such lawsuit, charge, claim, or proceeding and the net proceeds of the settlement proceeds paid to him under this Agreement.

4.  **Non-Admission**

This Agreement does not constitute an admission that defendants have violated any law, statute, or contract or committed any wrongdoing whatsoever, and plaintiffs expressly acknowledge that defendants continue to deny any wrongdoing arising out of plaintiffs' employment and separation thereof.

5.  **Settlement Approval**

Pursuant to the Court's October 23, 2014 Order, the parties shall submit this executed Agreement to the Court for its review and approval. If required by the Court, the parties shall jointly confer and file a motion seeking the Court's approval of this Agreement.

3

6. **Confidentiality**

Plaintiffs represent, covenant, and agree that they will keep the terms and amount of this Agreement completely confidential and that they have not disclosed (including any time before the signing of this Agreement) and will not hereafter disclose any information concerning the monetary amounts set forth in this Agreement, including any representation about their satisfaction or lack of satisfaction with the settlement, to any person other than to members of their immediate family; their attorneys, accountants and/or licensed tax preparer, each of whom shall be informed of this provision and be bound by its terms. Anything to the contrary notwithstanding, the terms of this Agreement may be disclosed in a proceeding to enforce this Agreement, or where required by applicable law, court order, or subpoena, but provided that if he is required by law, he shall notify defendants c/o Jamie S. Felsen, Esq., Milman Labuda Law Group PLLC, 3000 Marcus Avenue, Suite 3W8, Lake Success, New York 11042, in writing of any such required disclosure not less than ten (10) days prior to the time set for disclosure to allow defendants sufficient time to respond.

Plaintiffs recognize and acknowledge that their agreement to be bound by and to strictly comply with this confidentiality obligation is a material inducement to Defendants' willingness to enter into this Agreement, and that Defendants would not have entered into this Agreement absent such agreement by Plaintiffs. If specifically asked about the status of the Pending Action or this Agreement, Plaintiffs agree that they will respond solely by stating that "The Parties' disputes have been amicably resolved." The parties further stipulate that, to the extent the Court requires any part of this settlement to be docketed and made part of the public record in order to obtain judicial approval, which action the parties will not request, such a determination shall not be deemed inconsistent with the terms of this agreement. In any event, any determination by the Court that all or part of this agreement be docketed as a matter of public record in order to be approved shall not in any way affect (1) Plaintiffs' obligations under this section to maintain confidentiality and respond to inquiries concerning the resolution of these matters; or (2) the validity and/or enforceability of this agreement.

If either Plaintiff breaches the terms of this confidentiality provision, the breaching Plaintiff shall pay to the Defendants damages suffered by Defendants as a result of any such breach and costs, liquidated damages in the amount of $5,000 and attorneys' fees incurred by Defendants in enforcing this provision.

Plaintiffs agree that they will not contact, through themselves or a third party, any representative of the media (press, television, radio or internet) or make any press release or public statement concerning this Settlement, and if contacted by any representative of the media or press, will only state that the matter has been satisfactorily resolved on mutually agreeable terms. Further, Plaintiffs agree that they will not post any information concerning this Settlement on any website or on any other form of advertisement or public information.

7. **Re-employment**

Plaintiffs hereby waive any and all rights to employment, reinstatement or re-employment with the defendants, their parents, subsidiaries, affiliates, successors and assigns, or divisions, and they will not in the future ever seek reemployment in any position with defendants, their parents, subsidiaries, affiliates, successors and assigns, or divisions, nor will

they seek or apply for any such employment either directly or indirectly through an employment agency, temporary agency, or third party.

8. **Release**

In consideration of the payments, benefits, agreements and other consideration to be provided by defendants as described in the Agreement, plaintiffs, for themselves and for their heirs, executors, administrators and their respective successors and assigns, **HEREBY RELEASES AND FOREVER DISCHARGE**, to the maximum extent permitted by law, defendants, any insurers of defendants, and defendants' respective parent corporations, shareholders, stockholders, subsidiaries, affiliates, divisions, successors and assigns, their respective current and former officers, directors, employees, trustees, agents, whether personally as individuals or in their official corporate capacity, and each of their respective successors and assigns of and from all or any manner of actions, causes and causes of action, suits, debts, obligations, damages, complaints, liabilities, losses, covenants, contracts, controversies, agreements, promises, and expenses (including attorneys' fees and costs), , executions, claims and demands whatsoever at law or in equity ("claims"), specifically including by way of example but not limitation, the Fair Labor Standards Act, New York Labor Law, New York Code Rules and Regulations, Title VII of the Civil Rights Acts of 1964 and 1991, as amended; the Civil Rights Act of 1866; the Employee Retirement Income Security Act of 1974, as amended; Family Medical Leave Act, the Occupational Safety and Health Act; the National Labor Relations Act, as amended; The Age Discrimination in Employment Act; the Americans with Disability Act of 1990; the Worker Adjustment and Retraining Notification Act; and all Federal, State and local statutes, regulations, decisional law and ordinances and all human rights, fair employment, contract and tort laws relating to plaintiffs' employment with defendants and/or the separation thereof including, again by way of example but without limitation, the New York State Human Rights Law, the New York City Human Rights Law, any civil rights or human rights law, as well as all claims for or concerning wrongful discharge, breach of contract, personal injury, defamation, mental anguish, injury to health and reputation, working conditions and fraud, which plaintiffs ever had, now have, or which plaintiffs hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever without limitation arising out of plaintiffs' employment by defendants, their separation thereof, and/or the negotiation and/or execution of this Agreement, or all claims referred to or identified in various correspondence to and between the parties leading up to this Agreement.

Plaintiffs and defendants acknowledge that this Agreement does not limit any party's right, where applicable, to file or participate in an investigative proceeding of any federal, state or local governmental agency. To the extent permitted by law, plaintiffs agrees that if such an administrative claim is made, plaintiffs shall not be entitled to recover any individual monetary relief or other individual remedies.

9. **Attorneys' Fees**

Except as noted in paragraph 1, no party shall be responsible or liable for the payment of any attorneys' fees for the other party.

10. **Representations and Acknowledgements**

   (a) Plaintiffs understand and agree that they have been advised to consult with their own attorneys before signing this Agreement.

   (b) Plaintiffs will not directly or indirectly through a third party solicit or encourage any individuals to commence a lawsuit or administrative proceeding against Defendants.

   (c) Plaintiffs confirm that, as of the date of execution of this Agreement, they know of no other current or former employees of Defendants who have expressed an interest in bringing any claim(s) against Defendants.

11. **Oral Modifications Prohibited**

   This Agreement represents the entire agreement between plaintiffs and defendants with respect to plaintiffs' employment with defendants. This Agreement cannot be amended, supplemented, or modified nor may any provision be waived, except by a written instrument executed by the party against whom enforcement of any such amendment, supplement, modification or waiver is sought.

12. **Stipulation of Dismissal**

   Plaintiffs agree to withdraw their complaint (Case No.: 14-cv-4953) and shall execute a Stipulation of Dismissal with prejudice (annexed hereto) upon full execution of this Agreement, which shall be filed with the Court immediately.

13. **Enforcement of the Agreement**

   This Agreement shall be governed by the law of the State of New York, without regard to the choice-of-law or conflicts-of-law principles of any jurisdiction.

14. **Effective Date**

   This Agreement and Release shall become effective immediately upon execution.

15. **Interpretation**

   No interpretations or ambiguous language should be treated in favor or against any one party and that each party played an equal role in drafting and finalizing this Agreement, as authors and detailers.

16. **Counterparts**

   This Agreement may be executed on multiple counterparts, each of which shall be considered an original but all of which will constitute one (1) Agreement.

**PLAINTIFFS:**

_____
**Oscar Miguel Baires**
Date: 11-14-14

_____
**Francisco Clavel-Meneses**
Date: 11-14-14

**DEFENDANTS:**

The New Great Neck Car Wash, Inc.

By: _____
   **Matthew Silverman**

_____
**Matthew Silverman**
Date: 11/14/14

7